IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **VICTORIA NICHOLSON**, *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )   CIVIL ACTION 06-0635-WS-B |
| | ) |
| **MIKE JOHANNS, SECRETARY, U.S.** | ) |
| **DEPARTMENT OF AGRICULTURE,** | ) |
| | ) |
| **Defendant.** | ) |

**ORDER**

This matter comes before the Court on defendant's Motion for Summary Judgment (doc. 35). The Motion has been briefed and is ripe for disposition at this time.

**I.  Background.**[1]

On October 13, 2006, plaintiffs Victoria and Sam Nicholson initiated this action against the United States Department of Agriculture, alleging race discrimination by defendant in administering a home loan to Victoria Nicholson ("Ms. Nicholson"). According to the First Amended Complaint (doc. 24), plaintiffs (who are black) seek redress under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.* ("ECOA"), on the grounds that defendant erroneously, arbitrarily and discriminatorily placed plaintiffs' account in foreclosure in April 2004, and manipulated plaintiffs thereafter to force them to pay more than they owed on the loan. The gist of plaintiffs' theory of recovery is that "[t]he Defendant engaged in discrimination against the plaintiffs with malice or reckless indifference to plaintiffs' rights, and violated the [ECOA]." (Amended Complaint, ¶ 12.)

The summary judgment record is sparse, inasmuch as plaintiffs' only contribution to it is a six-paragraph declaration executed by Ms. Nicholson. Nonetheless, viewed in the light most favorable to plaintiffs, the record reflects that on September 27, 1985, Ms. Nicholson obtained a

---

[1]   The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, the Nicholsons' evidence is taken as true and all justifiable inferences are drawn in their favor.

loan from the Rural Housing Service, United States Department of Agriculture ("USDA") in the principal amount of $32,500, with an annual interest rate of 10.625%, for certain residential property located in Conecuh County, Alabama. (Moncus Decl. (doc. 36, Exh. A), ¶ 3 & Exhs. A-1, A-2.)[2]  Pursuant to that loan, Ms. Nicholson agreed to pay the USDA mortgage payments of $300 per month for a 393-month period expiring in 2018.  (*Id.*, ¶ 4 & Exh. A-1.)

It is undisputed that one condition of the USDA loan was that Ms. Nicholson must provide proof of homeowner's insurance for the property securing the note and mortgage. (*Id.*, ¶ 5 & Exh. A-3.)  On July 3, 2001, the USDA sent Ms. Nicholson a letter captioned "***Notice of Placement of Insurance***" and reflecting that she had failed to send the USDA a copy of her current homeowner's insurance policy, as she was required to do.  Accordingly, the letter stated, "If you have a copy of your current insurance policy, please send it to us as quickly as possible." (Moncus Decl., ¶ 7 & Exh. A-5.)  The July 3 letter cautioned Ms. Nicholson that if she failed to comply, the USDA would write a homeowner's insurance policy for her, at a potentially higher cost than privately obtained insurance, and that premiums would be charged via an escrow account that would increase her monthly mortgage payment.  There is no evidence of record that Ms. Nicholson made any response to this letter.  On August 13, 2001, the USDA sent a second letter to Ms. Nicholson reiterating these concerns and warning her that if she failed to send a copy of her homeowner's policy in the next 30 days, the USDA would write a policy bearing an annual premium of $210.79, for which Ms. Nicholson would be responsible in the form of an increased monthly mortgage payment. (*Id.* & Exh. A-6.)  Again, there is no evidence of record that Ms. Nicholson responded to the August 2001 letter.[3]

---

[2]  Notwithstanding the apparently unchallenged fact that the mortgage loan was entered into exclusively between the USDA and Ms. Nicholson, her husband, Sam Nicholson, is also named as a plaintiff herein and asserts claims identical to those of his wife.

[3]  At most, plaintiffs offer Ms. Nicholson's general, conclusory statement that "[a]t all times during the loan, we had proven to the Defendant that we had current and valid insurance."  (Nicholson Aff., ¶ 5.)  But that conclusory statement sheds no light on what action, if any, plaintiffs took in response to the July 2001 and August 2001 letters.  The Court cannot simply assume that plaintiffs responded to those letters by furnishing the necessary insurance info to the USDA.  It is clear in this Circuit that conclusory allegations without sufficient supporting facts are insufficient to raise genuine issues of material fact on summary judgment.

In the absence of any apparent response by Ms. Nicholson to the notices of July 2001 and August 2001 regarding the need for proof of insurance, on May 9, 2002, the USDA sent Ms. Nicholson a letter reflecting that an escrow account had been established on her account "as a result of Force [*sic*] place insurance" and that her new monthly mortgage payment, effective with her July 2002 payment, would be $327.99, including the regular $300 amount, plus $22.95 for escrow and $5.04 in fees.  (*Id.*, ¶ 8 & Exh. A-7.)[4]  There is no evidence that Ms. Nicholson responded to the May 2002 letter or challenged these arrangements in any way.  But Ms. Nicholson did not comply with the May 2002 letter either; rather, the record reflects that from July 2002 through August 2003, she continued making monthly payments in the amount of $300, rather than the adjusted amount of $327.99, creating a growing deficiency balance on her account.  (*Id.*, ¶ 9 & Exh. A-4.)  After August 2003, USDA audit records show, Ms. Nicholson ceased making payments on her loan altogether.  (*Id.*)  There is no explanation in the record for why Ms. Nicholson systematically underpaid on her mortgage from July 2002 through August 3003 in the aggregate amount of $391.96 (or $27.99/month times 14 months), nor do plaintiffs proffer any justification for why Ms. Nicholson halted all payments on her mortgage between September 2003 and March 2004.

In light of the deficiencies and defaults on her account, the USDA commenced foreclosure proceedings in September 2003.  (Moncus Decl., ¶ 10.)  The uncontroverted evidence is that Ms. Nicholson first responded via letter dated April 20, 2004, wherein she protested that "the default was not on our part" and that "[i]f there is default in the foreclosure it is not on the part of the the [*sic*] Borrower."  (*Id.*, ¶ 11 & Exh. A-8.)  The default was ultimately

---

*See, e.g., Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (noting that "conclusory allegations without specific supporting facts have no probative value" and that one who "resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial").

[4]   The record reflects that, in issuing forced place insurance to Ms. Nicholson and charging her for same, the USDA was acting in accordance with its own internal program requirements.  (Moncus Decl., ¶ 17.)  The record further reflects that, in issuing such insurance to Ms. Nicholson and initiating foreclosure proceedings when her account became delinquent, the USDA was merely acting "pursuant to its normal course of business."  (*Id.*)  Plaintiffs have proffered no evidence to the contrary.

cured when the USDA applied Ms. Nicholson's 2003 income tax refund of $2,739.23 to the delinquency, and when Ms. Nicholson remitted a check to the USDA in the amount of $1,270.38 on April 28, 2004, thereby bringing her account current. (*Id.*, ¶ 12 & Exh. A-9.) At that time, the USDA terminated the foreclosure proceedings and reinstated the account, albeit not before a notice of foreclosure had been published in a local newspaper, the cost of which was billed to plaintiff. (*Id.*, ¶¶ 12-13 & Exh. A-9.) On June 23, 2004, USDA officials spoke with Ms. Nicholson about those advertising costs and explained why she was responsible for them. (*Id.*, ¶ 14 & Exh. A-9.) Plaintiffs made required payments on the loan until September 2005, when they made arrangements to pay off the loan and successfully paid it off in its entirety. (*Id.*, ¶¶ 15-16.)

## II.   Summary Judgment Standard.

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III.   Analysis.

Plaintiffs' sole cause of action asserted against the USDA in the Amended Complaint is a statutory claim pursuant to the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.* ("ECOA"). "The ECOA is an anti-discrimination statute which prohibits creditors from

discrimination in the extension of credit. ... It was enacted to protect consumers from discrimination by financial institutions." *Brown v. Interbay Funding, LLC*, 417 F. Supp.2d 573, 578 (D. Del. 2006); *see also Davis v. Regional Acceptance Corp.*, 300 F. Supp.2d 377, 384 (E.D. Va. 2002) ("The ECOA was enacted to address discrimination in any aspect of any credit transaction.")  The ECOA creates a private right of action against a creditor, including the United States, who "discriminate[s] against any applicant, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1).[5]

Defendant maintains that it is entitled to summary judgment both because plaintiffs' claims are untimely and because plaintiffs cannot satisfy their burden of proof under the *McDonnell-Douglas* burden-shifting standard.  The Court agrees in both respects.

### A.     Timeliness Issue.

Plaintiffs' ECOA claims are subject to a two-year statute of limitations.  *See* 15 U.S.C. § 1691e(f) (providing, with exceptions that do not apply here, that no civil action under ECOA "shall be brought later than two years from the date of the occurrence of the violation"); *see also Stovall v. Veneman*, 394 F. Supp.2d 21, 25 (D.D.C. 2005) ("The statute of limitations for bringing a discrimination claim under the ECOA is two years from the date of the alleged violation."); *Haynie v. Veneman*, 272 F. Supp.2d 10, 15 (D.D.C. 2003) ("ECOA requires that an action be brought no later than two years after the occurrence of an alleged violation").

The USDA's position is that the Nicholsons' claim is time-barred because they cannot show any alleged ECOA violation that occurred within two years prior to the October 2006 filing of the Complaint.  In support of this assertion, defendant points to two pieces of evidence. First, it cites the Declaration of John W. Moncus, a USDA official, who states that the USDA "took no further adverse action on the mortgage or against Plaintiffs after ceasing the foreclosure

---

[5]     Congress's waiver of sovereign immunity is plain from the text of the statute; therefore, it cannot reasonably be disputed, and the USDA does not dispute, that plaintiffs may sue it under to the ECOA.  *See, e.g., Moore v. U.S. Dep't of Agriculture on Behalf of Farmers Home Admin.*, 55 F.3d 991, 994 (5th Cir. 1995) ("We, like the parties, read the ECOA to include a broad waiver of governmental immunity.  The plain language of the ECOA unequivocally expresses Congress' intentions: governmental entities are liable under the Act.").

and informing Plaintiffs of the amount added to their loan obligation for foreclosure costs, including the newspaper advertisement expense, on June 23, 2004." (Moncus Decl., ¶ 14.) According to Moncus, the monthly payments plaintiffs owed and their payoff balances were determined by events occurring prior to June 23, 2004, such that they were simply the effects of allegedly discriminatory acts occurring outside the two-year limitations period. (*Id.*, ¶¶ 18-19.) Second, defendant relies on Ms. Nicholson's deposition testimony, wherein she testified that her "problems" with the USDA ended in April 2004. (Ms. Nicholson Dep., at 3-4.)[6] If, by their own admission, plaintiffs' "problems" with defendant ended some 30 months before they filed their Complaint, defendant reasons, the two-year statute of limitations cannot possibly be satisfied.

In an attempt to counter these arguments and create an issue of fact as to timeliness, plaintiffs submit Ms. Nicholson's Declaration, wherein she states that the USDA engaged in conduct actionable under the ECOA as late as November 2004, or slightly less than two years before the Complaint was filed. In particular, Ms. Nicholson declares under penalty of perjury that after plaintiffs paid the payoff amount quoted by the USDA in October 2004, they "were notified by the defendant in November 2004 that [they] still owed more money," such that their mortgage would not be canceled or satisfied until plaintiffs "paid more money that [they] did not owe." (Ms. Nicholson Decl., ¶ 3.) Ms. Nicholson also complains in her Declaration that the

---

[6]   The deposition excerpt at issue reads as follows:

"Q:   Okay. Please tell me what your problems were with the Department of Agriculture.
"A:   A lot of problems. ...
"Q:   When did those problems start?
"A:   I'm not sure when it started, several years after the loan. I took out the loan around in the 80s and 90s.
"Q:   And how long did that go on?
"A:   Up to this point where we're at now, '04. Years after that, 10, 15 years or more.
"Q:   All right. Up to this point. Do you mean today?
"A:   No. The point where we're at back in '04.
"Q:   **April of '04 with those letters?**
"A**:   Yeah.**
"Q:   **And that's when the problems ended?**
"A:   **Yes. That's when they done ended**."

(Ms. Nicholson Dep., at 3-4 (emphasis added).)

USDA informed plaintiffs in November 2004 that they owed money on insurance, and that plaintiffs received a letter from defendant dated November 3, 2004 characterizing their payoff as "deficient" despite previous assurances otherwise.  (*Id.*, ¶¶ 4, 6.)

Defendant objects that Ms. Nicholson's Declaration should be stricken under the "sham affidavit" doctrine.  "Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003); *see also Fisher v. Ciba Speciality Chemicals Corp.*, 238 F.R.D. 273, 284 (S.D. Ala. 2006) (explaining and applying "sham affidavit" rule).  The Eleventh Circuit has recently cautioned that the sham affidavit rule "is applied sparingly because of the harsh effect it may have on a party's case."  *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007) (citation and internal quotations omitted).  For that reason, and to avoid depriving the trier of fact of the opportunity to discern which witnesses are telling the truth, this Circuit "require[s] the court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit."  *Id.* (citation omitted).

The Court readily finds an inherent inconsistency in Ms. Nicholson's Declaration.  Her unequivocal deposition testimony in July 2007 was that her "problems" with the USDA concluded in April 2004; however, two months later, she signed a Declaration complaining of alleged wrongful conduct by the USDA in November 2004.  The discrepancy is obvious and glaring.  As such, it was incumbent on plaintiffs to provide some justification for the abrupt shift in Ms. Nicholson's testimony.  *See, e.g., Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656 (11th Cir. 1984) (explaining that while a nonmovant cannot create a genuine issue of material fact by contradicting, without explanation, prior clear testimony, he may submit an affidavit clarifying prior testimony).[7]  Plaintiffs have made no effort to reconcile the two. Having given unambiguous sworn testimony under oath during discovery that plaintiffs'

---

[7]    *See also Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002) (observing that a nonmovant "may attempt to clarify or augment (but not contradict) prior deposition testimony through affidavits"); *Messick v. Horizon Industries, Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995) (stating that, even under the "sham affidavit" doctrine, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony").

difficulties with the USDA came to an end in April 2004, Ms. Nicholson is not free to change her story or assign a different terminus date to the alleged wrongful conduct now simply because it may suit her purposes to do so.  Having committed to one set of facts in her deposition (the complete transcript of which weighs in at a meager seven pages) and having made no attempt to explain it away, Ms. Nicholson must live with those responses.  Accordingly, the Declaration of Victoria Nicholson submitted on summary judgment will be disregarded as a sham affidavit, given its obvious, unexplained, inherent conflict with her prior deposition testimony.[8]

Ms. Nicholson's Declaration having been excluded, plaintiffs have neither evidence nor argument tending to show that their claims against the USDA fall within the two-year limitations period prescribed by the ECOA.  Because Ms. Nicholson's own testimony is that the Nicholsons' problems with the USDA came to an end in April 2004, and given defendant's uncontroverted evidence that the USDA's last dealings on the mortgage that were adverse to the Nicholsons occurred in June 2004, the Court finds that plaintiffs' claims concern alleged statutory violations predating the filing of their Complaint by more than two years.  As a result, those claims are time-barred and are properly **dismissed** pursuant to 15 U.S.C. § 1691e(f).

### B. *Plaintiffs Have Not Shown a* **Prima** Facie *Case of Discrimination.*

Even if plaintiffs' claims were timely, defendant would nonetheless be entitled to summary judgment on its alternative defense that plaintiffs have failed to make the requisite *prima facie* showing for an ECOA violation.

The ECOA makes it unlawful for a creditor to discriminate against a credit applicant

---

[8] While this outcome might appear harsh, fundamental considerations of fairness and equity demand it.  During the discovery process, USDA availed itself of its right to depose Ms. Nicholson to gain insight as to the nature and factual basis of her claims.  She testified unequivocally in her deposition that her dissatisfactions with the USDA concluded in April 2004, which is obviously outside the relevant limitations period.  Defendant was entitled to rely on that admission in implementing its discovery strategy and preparing its summary judgment papers, without being blindsided after the fact by a sudden shift by plaintiffs to complain about later alleged wrongdoing that Ms. Nicholson omitted in her deposition, after it was too late for defendant to explore these issues in discovery or to alter its summary judgment approach.  Simply put, the sham affidavit rule ensures that litigants cannot engage in wholesale revision of their testimony whenever expedience favors it; otherwise, discovery would be meaningless, the value of depositions would be negligible, and the summary judgment procedural device would be largely useless.

"with respect to any aspect of a credit transaction." 15 U.S.C. 1691(a). Discrimination on the basis of some protected class (such as race) is a vital component to plaintiffs' ECOA claim, as the statute does not forbid a creditor's mere efforts to collect on a debt. *See, e.g., Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 406-07 (6th Cir. 1998) (observing that a creditor's mere efforts to take necessary actions to recover an undisputed debt that the consumer refuses to honor is not a violation of the ECOA). The ECOA is not a general, catch-all, prophylactic remedy allowing any disgruntled debtor to sue a creditor for any slight, real or imagined; rather, the conduct it proscribes is the discriminatory administration of a credit transaction. Without proof of discrimination, plaintiffs have no cognizable ECOA claim.[9]

"Courts which have interpreted ECOA have used the same analytical framework as that used in actions pursuant to Title VII of the Equal Employment Opportunity Act, 42 U.S.C. §§ 2000e to 2000e-17." *Mercado Garcia v. Ponce Federal Bank, F.S.B.*, 779 F. Supp. 620, 628 (D.P.R. 1991); *see also Spector v. Trans Union LLC First USA Bank, N.A.*, 301 F. Supp.2d 231, 238-39 (D. Conn. 2004) ("Courts have generally required proof in ECOA cases to conform to the traditional Title VII tests.") (citation omitted); *Cooley v. Sterling Bank*, 280 F. Supp.2d 1331, 1338 (M.D. Ala. 2003) ("this court concludes that Title VII's analytical approach applies to ECOA discrimination claims"); *Gross v. U.S. Small Business Admin.*, 669 F. Supp. 50, 52 (N.D.N.Y. 1987) ("Plaintiff may establish her ECOA claims in a manner similar to that used in Title VII discrimination cases."). As defendant has advocated that approach here and plaintiffs have not argued otherwise, the Court will apply the Title VII framework to plaintiffs' claims of discrimination under the ECOA.

In the absence of any direct evidence of discrimination or evidence that could support a finding of disparate impact, the Nicholsons must come forward with circumstantial evidence which satisfies the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this burden-shifting analysis, plaintiffs are required to

---

[9] The Court recognizes that "[i]n addition to a generalized prohibition of discrimination, [ECOA] also establishes procedural requirements for extending credit and communicating with applicants." *Davis v. U.S. Bancorp*, 383 F.3d 761, 766 (8th Cir. 2004). Here, however, plaintiffs have not brought any claims alleging violation of those procedural requirements; rather, their ECOA claims rest exclusively on a discrimination theory.

make out a *prima facie* case of race discrimination.[10] If they do so, that showing "creates a rebuttable presumption that the [creditor] acted illegally." *Underwood v. Perry County Com'n*, 431 F.3d 788, 794 (11th Cir. 2005). At that point, "the burden shifts to the [creditor] to articulate a legitimate, nondiscriminatory reason for [the adverse credit action]. ... If the [creditor] does so, the burden shifts back to the plaintiff to introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997) (citations omitted). A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the [creditor] or indirectly by showing that the [creditor]'s proffered explanation is unworthy of credence." *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted). The ultimate burden of persuasion remains with the plaintiff. *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002). Thus, "[i]f the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant [creditor]'s articulated reasons is pretextual, the [creditor] is entitled to summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (*en banc*).[11]

In many ECOA cases, courts have framed the *prima facie* test as requiring a plaintiff to demonstrate that (a) she is a member of a protected class, (b) she applied for and was qualified

---

[10] Plaintiffs' burden of establishing a *prima facie* case is not heavy. *See Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) ("the *prima facie* requirement is not an onerous one").

[11] Although the cases cited in this paragraph all deal with employment discrimination claims, there is ample authority extending these principles to the ECOA setting. For example, in *Gross v. U.S. Small Business Admin.*, 669 F. Supp. 50 (N.D.N.Y. 1987), the court explained that if a plaintiff satisfies her *prima facie* burden of showing an ECOA violation, "the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason for the denial of credit" or other unfavorable treatment in the credit transaction. *Id.* at 53. "If the defendants produce such evidence, the plaintiff may still prevail if she can prove by a preponderance of the evidence that a discriminatory reason more likely motivated the defendants, or that the defendants' proffered explanation is unworthy of credence or is a pretext for discrimination." *Id.* "Throughout this process, however, the ultimate burden of persuasion remains with the plaintiff." *In re Armstrong*, 288 B.R. 404, 423 (Bkrtcy. E.D. Pa. 2003).

for an extension of credit, (c) despite her qualifications she was rejected, and (d) "others of similar credit stature were extended credit or were given more favorable treatment than plaintiff." *Mercado Garcia*, 779 F. Supp. at 628; *see also Gross*, 669 F. Supp. at 53 (*prima facie* test in ECOA discrimination claim requires showing that plaintiff belongs to protected class, that she applied for and was qualified for a loan, that she was rejected despite her qualifications, and that "males or married females of similar credit stature were given loans, or were treated more favorably than plaintiff in the application process"). Here, of course, the Nicholsons are not claiming that their credit application was rejected, but rather are alleging unfair manipulation in the administration of a loan previously obtained from the USDA. In this circumstance, a fair formulation of the *prima facie* case is that the Nicholsons must establish that (a) they are members of a protected class, (b) they were qualified for and were receiving credit from USDA, (c) USDA subjected them to adverse actions in administering the credit transaction, and (d) similarly situated persons outside the protected class were treated more favorably than plaintiffs.

The fourth element is of particular interest here. In the employment context, the Eleventh Circuit has routinely required a *prima facie* showing of differential treatment between the plaintiff and a similarly-situated person outside the protected class. *See, e.g., Maynard v. Board of Regents of Div. of Universities of Florida Dep't of Educ. ex rel. University of South Florida*, 342 F.3d 1281, 1289 (11th Cir. 2003) (fourth element of *prima facie* showing is that plaintiff "was treated less favorably than a similarly-situated individual outside [her] protected class"); *Chapman*, 229 F.3d at 1024 (in termination context, fourth element of *prima facie* case under ADEA is that plaintiff "was replaced by or otherwise lost a position to a younger individual"); *Coutu v. Martin County Bd. of County Com'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995) (in termination case, *prima facie* case requires showing that plaintiff was replaced by a person outside the protected class). In the ECOA context, courts have similarly insisted on proof that similarly-situated persons outside the protected class were treated more favorably than the plaintiff. *See Visconti v. Veneman*, 2006 WL 3069214, *3 (3rd Cir. Oct. 30, 2006) ("To establish a *prima facie* case of discrimination under the ECOA in these circumstances, the Viscontis must establish, inter alia, that others not in their protected class were treated more favorably."); *Cooley*, 280 F. Supp.2d at 1339-40 (characterizing fourth element of *prima facie* case in ECOA context as requiring proof "that the defendant continued to approve loans for applicants outside

of the plaintiff's protected class with similar qualifications," and explaining that plaintiff must show that similarly situated non-minority applicants have been treated differently in order to satisfy *prima facie* test).

Careful scrutiny of the summary judgment record reveals no evidence that the USDA has treated borrowers outside plaintiffs' protected class (African-American) more favorably with respect to "forced place insurance," defaults, foreclosures, and payoff procedures.[12] Given the dearth of evidence that any similarly-situated white borrower has been treated any more favorably by the USDA than the Nicholsons were with respect to any credit transaction, plaintiffs cannot satisfy their *prima facie* burden under the ECOA. *See Brown*, 417 F. Supp.2d at 578 (finding that plaintiffs failed to make *prima facie* showing under the ECOA where there was no evidence demonstrating differential treatment between credit applicants of different races); *Spector*, 301 F. Supp.2d at 238-39 (granting summary judgment for creditor on ECOA claim where record was devoid of evidence that creditor discriminated against plaintiff on the basis of her marital status). Accordingly, even if plaintiffs' ECOA claims were timely filed (which the Court has already determined they were not), summary judgment would remain warranted because plaintiffs have not met their *prima facie* burden of showing racially discriminatory treatment in any aspect of their credit transaction.

## IV.     Conclusion.

For all of the foregoing reasons, defendant's Motion for Summary Judgment (doc. 35) is due to be, and the same hereby is, **granted**. There being no genuine issue of material fact, this action is **dismissed with prejudice**. A separate judgment will enter.

DONE and ORDERED this 13th day of November, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[12] Indeed, during summary judgment briefing, plaintiffs elected not even to respond to this argument by defendant. Their opposition brief (doc. 40) focused exclusively on the timeliness issue without proffering any evidence or argument that might enable them to reach a jury on the question of whether the USDA discriminated against them on the basis of race in administering the loan.